**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATTI KOPKO,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **LEHIGH VALLEY HEALTH** | : | |
| **NETWORK, et al.,** | : | **NO. 14-1290** |
| | : | |
| **Defendants.** | | |

**M E M O R A N D U M**

**STENGEL, J.**                                                    **October 31, 2016**

**I.     INTRODUCTION**

Plaintiff, Patti Kopko, brings this employment discrimination action against her former employer, Defendants Lehigh Valley Health Network and Lehigh Valley Hospital (collectively "LVH"), alleging that the defendants discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, when they fired her.  LVH moves for summary judgment on Kopko's ADEA and PHRA claims citing a legitimate non-discriminatory reason for Kopko's discharge, namely that she violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  For the reasons discussed below, I am granting the defendants' motion for summary judgment.

## II.    BACKGROUND[1]

Plaintiff, Patti Kopko, was hired by LVH in 1991, when she began working as a hospital discharge planner. (Doc. No. 43-1 ¶¶ 33–34).[2] In 2005, Kopko's job title changed to case manager. (Id. ¶ 34). As a case manager, Kopko was a non-clinical employee at LVH. (Id. ¶¶ 37–38). In 2008, Elizabeth Prokurat became the supervisor of the case management department at LVH. (Doc. No. 44-2 ¶ 9).[3] On April 14, 2009, while working as a case manager at LVH, Kopko received a phone call from her cousin, Ann Bavaria. (Id. ¶ 14). At the time, Ms. Bavaria was the Vice President of Marketing and Human Resources for New Tripoli Bank. (Doc. No. 43-1 ¶ 56). This phone call was about one of Bavaria's employees at New Tripoli Bank. (Id. ¶ 14). The bank employee, J.M., had been a patient at LVH several months earlier, but at the time of the phone call she was not a patient at LVH. (Id. ¶ 69; Doc. No. 44-2 ¶ 14). J.M. is not related to Bavaria in any way. (Doc. No. 43-1 ¶ 60).

During this phone call, Bavaria asked Kopko to provide her with the name of a specialist physician for J.M., claiming that J.M. had been experiencing abdominal pain. (Doc. No. 43-1 ¶ 68). As a case manager, Kopko would sometimes provide discharge

---

[1] The majority of the facts are taken from the defendants' statement of uncontested facts. Pursuant to Federal Rule of Civil Procedure 56(e)(2), plaintiff has failed to address the defendants' assertion of facts as required by Rule 56(c). As explained in my Policies and Procedures, "[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts, in numbered paragraphs, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended there exists a genuine issue to be tried." *Judge Lawrence F. Stengel Policies & Procedures* at p. 7, § II(C)(4). Rather than admit or deny the facts alleged in defendants' statement of uncontested facts, plaintiff submitted her own statement of disputed facts and a separate statement of undisputed facts, neither of which is responsive to defendants' statement of facts. Because plaintiff neither admitted nor denied the defendants' facts, I will consider them undisputed for purposes of this motion.

[2] Def.'s Statement Uncontested Material Facts.

[3] Pl.'s Statement of Uncontested Material Facts.

plans for patients who were leaving LVH. (Id. ¶ 71). Kopko was never involved in

preparing J.M.'s discharge plan. (Id.) Bavaria told Kopko that J.M. knew she was calling,

but Kopko never asked Bavaria whether J.M. had expressly authorized Bavaria to talk

about J.M.'s medical condition. (Id. ¶¶ 74–77). In response to Bavaria's request, while on

the phone, Kopko accessed J.M.'s health records electronically. (Id. ¶ 79). This included

looking into J.M.'s laboratory blood results, MRI results, medical history, physicals, and

operative reports. (Id. ¶ 80).[4] After looking over J.M.'s medical records, Kopko provided

Bavaria with the name of a hematology oncologist specialist. (Id. ¶ 84). Kopko based this

upon her own "professional judgment" that the doctor she recommended would be best to

meet J.M.'s needs. (Id. ¶ 88). Kopko does not have a degree in medicine and she has

never received any formal medical or clinical training. (Id. ¶ 37).

     Six days after Bavaria and Kopko's phone call, the New Tripoli Bank employee

J.M. sent an email to her manager Bavaria. (Doc. No. 43-3, Ex. E). In the email, J.M.

initially thanked Bavaria for "provid[ing] me with a referral for a second opinion on my

health issues." (Id.) J.M. went on to write that J.M. was "uneasy" because Bavaria had

told J.M. that "someone at LV Hospital" looked at J.M.'s liver enzyme numbers, MRI

results, and blood work results. (Id.) J.M. finished the email by writing: "In the future I

would appreciate you asking me first before having my medical history opened. I

understand you are trying to help me and you are concerned for my wellbeing but I just

feel my privacy should be considered." (Id.) A few days later, J.M. lodged a formal

---

[4] These materials constitute "protected health information" under HIPAA. 45 C.F.R. § 160.103.

complaint with LVH through LVH's hotline telephone number. (Doc. No 43-3, Ex. L).

The complaint, which was transcribed by LVH employee Kimberly Badillo, states:

> Patient called office to report the following. A co-worker at her job is allegedly friends with an employee of the Network. Per the co-worker, this employee accessed her records and told the co-worker protected health information. Co-worker is undergoing disciplinary action at her job and patient wants to speak with the HIPAA officer and report this and have them check who may have been accessing her chart. Wants the HIPAA office to call her on her cell.

(Id.) In the complaint, J.M. further requested an acknowledgment, apology, clarification or explanation, and disciplinary action for this incident. (Id.) LVH's Compliance Officer, Carol Kreibel, subsequently followed up with J.M. and launched an investigation into J.M.'s complaint. (Doc. No. 43-1 ¶¶ 99–103). Through LVH's information technology ("IT") security and compliance teams' investigation, it was revealed that Kopko was the employee who had accessed J.M.'s medical records. (Id. ¶¶ 105–107). The IT investigation specifically revealed that Kopko had in fact accessed J.M.'s MRI results and blood work results. (Id. ¶ 117). Kopko does not dispute that she accessed J.M.'s medical information at the request of Bavaria or that she referred a hematology oncology specialist to Bavaria.[5]

Following this investigation, LVH had a meeting with Kopko on May 14, 2009. (Id. ¶ 120). At this meeting, LVH terminated Kopko for violating HIPAA. (Id. ¶ 120). Kopko's supervisor, Ms. Prokurat, as well as Dana Hacker, LVH's Human Resources Consultant, and Carol Kreibel, LVH's HIPAA Compliance Officer, were present at this meeting. (Doc. No. 43-2, Ex. C, Kopko Dep. 158:5–9). LVH's documentation of this

---

[5] Kopko does dispute, however, that she ever revealed any of J.M.'s health information to Bavaria.

4

meeting indicates that Kopko admitted, during the meeting, that she did give J.M.'s medical information to Bavaria when they spoke over the phone. (Doc. No. 43-3, Ex. M; Doc. No. 44-9, Ex. G). According to Dana Hacker, when confronted with J.M.'s complaint, Kopko used an expletive and then said, "I admit I accessed the medical record and that the person that called me was her cousin." (Doc. No. 44-22, Ex. U, Hacker Dep. 26:1–5). Kopko does not deny that she accessed J.M.'s medical records at Bavaria's request. (Doc. No. 44-1 ¶¶ 148–149). Immediately after the meeting concluded, Kopko asked to be left alone in the room with her supervisor, Ms. Prokurat. (Doc. No. 43-2, Ex. C, Kopko Dep. 159:12–13). Once they were alone, Kopko said to Ms. Prokurat, "you know, you can make this go away." (Id. 159:15–16). Prokurat did attempt—without success—to convince LVH supervisors and LVH's legal counsel not to terminate Kopko. (Doc. No. 43-1 ¶¶ 131–133). Following her termination, Kopko appealed internally within LVH before commencing this action. (Id. ¶¶ 163–198).[6] At the conclusion of this process, LVH affirmed its decision to terminate Kopko for a HIPAA violation. (Doc. No. 44-11, Ex. I). In doing so, Ms. Susan Lawrence, LVH's Vice President of Care Continuum at the time, stated among other things: "This was not a case of a secondary use or disclosure that cannot reasonably be prevented . . . . Rather, it was a willful act deliberately made in violation of policy and law, of which you were well aware." (Id.)

LVH maintains a HIPAA Confidentiality Policy. (Doc. No. 43-2, Ex. A). Kopko underwent HIPAA training at LVH in 2008. (Doc. No. 43-1 ¶ 30).The HIPAA policy

---

[6] LVH provides its employees with the opportunity to resolve "specific concerns," including adverse employment decisions, through LVH's internal Issue Resolution Procedure. (Doc. No. 43-4, Ex. Q).

states that "[u]nder no circumstances may an individual seek or use confidential

information for personal gain or pass it on to any person outside Lehigh Valley Health

Network, including family or friends, or even to other employees who do not need to

know such information to carry out their duties." (Id. at p. 5, § IV(F)(2)). The policy's

definition of confidential information includes a patient's financial records, medical

records, lab test results, insurance information, and demographic information. (Id. at p.

2). The policy further states that "[i]t is unacceptable to reveal a patient's health

information to another family member or friend without patient authorization." (Id. at p.

5, §§ IV(F)(3), (13)). The policy allows employees to divulge patients' confidential

information to people over the phone only (1) with the patient's expressed permission;

and (2) if the identity of the caller is established. (Id. at p. 5, § IV(F)(3)). If a LVH

employee purposefully violates patient confidentiality, he or she is subject to immediate

discharge. (Doc. No. 43-1 ¶ 23).

From 2008 through 2010, LVH terminated fifteen individuals for violating HIPAA

and patient confidentiality. (Doc. No. 43-4, Ex. Z). Of these fifteen individuals, the

majority were younger than forty years of age. (Id.) Nine were under the age of forty

when fired. (Id.) The other six were over the age of forty. (Id.) Kopko nonetheless

contends that she was treated less favorably than younger LVH employees who violated

HIPAA. Kopko claims that, in early May 2009, she witnessed a former LVH employee,

Holly Pettit, commit a HIPAA violation with no consequence or discipline from LVH.

(Doc. No. 44-2 ¶¶ 33–39). According to Kopko, Pettit was under the age of forty at the

time. (Id. ¶ 38). Kopko contends that she witnessed another LVH employee, Laura

Dobrosielski, send an email that contained a patient's name. (Id. ¶¶ 62–63; Doc. No. 43-1 ¶ 276). Kopko did not report this alleged HIPAA violation to anyone at LVH. (Doc. No. 43-2, Ex. C, Kopko Dep. 386:7–9). Mark Boyer, who was employed by Genesis Health Care, and often received patient referrals from Defendants, had access to LVH's protected patient information. (Doc. No. 44-2 ¶ 64). Believing this to be a HIPAA violation, Kopko complained to Defendants about it. (Id. ¶¶ 65–66). Another LVH employee who was under the age of forty "gave a patient's test results to a relative of the patient, without having first obtained any written or verbal" consent, and was allowed to resign instead of be terminated. (Id. ¶¶ 54–56). Another LVH employee under the age of forty, Carol Koch, allegedly violated HIPAA by telling her husband that his friend was a patient of Defendants. (Doc. No. 44-1 ¶ 59). Koch was terminated for this violation but subsequently reinstated. (Id. ¶ 61).[7]

Kopko also cites to an incident where an LVH employee who was under the age of forty assaulted a patient and was allowed to resign instead of be terminated. (Doc. No. 44-1 ¶¶ 52–53). Kopko alleges two physicians illegally wrote prescriptions and treated patients while under the influence of narcotics, but were allowed to continue working for Defendants. (Id. ¶¶ 57–58). Finally, Kopko maintains that, on numerous occasions, she would access patients' information at the request of her supervisors. (Id. ¶¶ 40, 43–61). Kopko was never disciplined for complying with her supervisors' requests. (Id.)

---

[7] Kopko's accusations concerning these other HIPAA incidents and LVH employees involve specific allegations of facts (e.g., the ages of these LVH employees, dates of their terminations, contents of the Dobrosielski email, and documents relating to the internal review process of Koch's internal appeal with LVH). Kopko does not cite to or rely on any documentary evidence to corroborate these allegations. Rather, she merely asserts them as true based upon her own affidavit.

Kopko makes several allegations that LVH displayed a discriminatory attitude toward its employees who were older than forty. First, Kopko attests that her supervisor, Ms. Prokurat, was hostile and vindictive to employees in the case management department who were over the age of forty. (Doc. No. 44-1 ¶ 1). According to Kopko, Ms. Prokurat referred to case management employees over the age of forty as "drama queens," "princesses," "deadwood," and "incompetent and needy." (Id. ¶¶ 6–9). Ms. Prokurat would allegedly state "that the Case Management Department was in need of 'younger people' and that she preferred having younger people under her supervision." (Id. ¶ 10). Ms. Prokurat also stated, according to Kopko, that younger people were "the future" and they made Ms. Prokurat "feel younger." (Id. ¶¶ 11–12). Kopko alleges Ms. Prokurat would also keep a list of people she intended to "get rid of," some of whom were over the age of forty. (Id. ¶ 18). LVH's Human Resources consultant, Dana Hacker, was not aware of any complaints lodged by LVH employees against Prokurat in the January 2008 through December 2009 period. (Doc. No. 44-2 ¶ 173). Aside from Ms. Prokurat and Ms. Lawrence, Kopko does not contend that anyone else at LVH discriminated against her on the basis of her age. (Doc. No. 43-2, Ex. C, Kopko Dep. 322:1–25). Kopko does not contend that any members of the Internal Review Panel, who ruled on Kopko's appeal of her termination at LVH, possessed any age animus. (Id.)

Two former LVH employees maintain that, while working at LVH, Ms. Prokurat made comments about older employees. Joyce Wlodek worked at LVH from January 2008 to May 2009. (Doc. No. 44-1 ¶ 85). At the time, Wlodek was sixty-three years old and Prokurat was her supervisor. (Id. ¶ 87). Wlodek claims Prokurat made comments

about her age, timed how long it took Wlodek to walk from her office to Prokurat's office, asked her when she planned to retire, and refused to give Wlodek an employee award. (Id. ¶¶ 88–98). Lori Molchany worked at LVH from January 2008 to April 2009. (Id. ¶ 99). During this time, she was forty-eight years old and Prokurat was her supervisor. (Id. ¶¶ 100–101). Molchany claims she once heard Prokurat tell a room full of employees at LVH that the "old people better get on the train or get off." (Id. ¶ 116). Molchany further contends that she was treated worse by Prokurat than her younger employees. (Id. ¶¶ 99–129). According to Molchany, Prokurat called the case management department "asinine" and once ridiculed Molchany for taking a sick day to cope with her children's health issues. (Id. ¶¶ 105–112, 125).

## III.    LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including

depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

Under Federal Rule of Civil Procedure 56, the Court must draw "all justifiable inferences" in favor of the non-moving party.  Anderson, 477 U.S. at 255.  The Court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Id. at 252.  In the context of employment discrimination claims, "conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment."  Taylor v. Cherry Hill Bd. of Educ., 85 F. App'x 836, 839 (3d Cir. 2004).

## IV.   DISCUSSION

LVH moves for summary judgment on Kopko's age discrimination claim.  I will grant LVH's motion because Kopko is unable to make out the fourth element required to establish a *prima facie* case of age discrimination.  I will grant LVH's motion also because, even if Kopko made out a *prima facie* case, she cannot show that LVH's legitimate nondiscriminatory reason was pretextual.

10

A.      *Age Discrimination Under the ADEA and PHRA*[8]

The ADEA makes it unlawful for employers to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). To succeed on an ADEA claim, the plaintiff must establish, by a preponderance of the evidence, that age was the "but for" cause of the challenged adverse employment action. Willis v. UPMC Children's Hosp., 808 F.3d 638, 644 (3d Cir. 2015) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009)).[9] Without direct evidence, ADEA claims are analyzed under the familiar three-step burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Barber v. CSX Distribution Servs., 68 F.3d 694, 698 (3d Cir. 1995).

Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of age discrimination. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). By satisfying the *prima facie* case, the plaintiff creates an inference of unlawful discrimination. Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999). To make out a *prima facie* case of age discrimination, the plaintiff must establish the

---

[8] The analysis used for ADEA claims is the same analysis used under the PHRA. Fasold v. Justice, 409 F.3d 178, 183–84 (3d Cir. 2005).

[9] This makes ADEA claims notably different from Title VII claims. Under Title VII, plaintiffs may pursue a "mixed motive" theory. Miller v. CIGNA Corp., 47 F.3d 586, 602 (3d Cir. 1995). A plaintiff may succeed under a "mixed motive" theory by showing that both discriminatory and nondiscriminatory reasons played a role in the employer's decision. Id. On the contrary, the U.S. Supreme Court has held that the ADEA does not authorize mixed-motive age discrimination claims. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). Under the ADEA, a plaintiff must always demonstrate that age was the "but for" cause of the employer's decision. Id.

following elements: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position at issue; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). If the plaintiff is not directly replaced, he or she may satisfy the fourth element by providing facts which, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. Willis, 808 F.3d at 644.

If the plaintiff establishes a *prima facie* case of age discrimination, the burden shifts to the employer who then must "articulate a legitimate nondiscriminatory reason for the adverse employment action." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 412 (3d Cir. 1999). This does not require the employer to prove that their legitimate nondiscriminatory reason was the actual reason for its employment decision. Willis, 808 F.3d at 644. Rather, the employer must provide evidence that would allow a factfinder to conclude that their decision was based on nondiscriminatory reasons. Id. (citing Fuentes v. Perksie, 32 F.3d 759, 763 (3d Cir. 1994)). At all stages of the McDonnell Douglas paradigm, "the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes, 32 F.3d at 763.

If the employer articulates a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff. Willis, 808 F.3d at 644. At this final stage, the plaintiff must show, by a preponderance of the evidence, that the employer's proffered nondiscriminatory reason was pretextual. Id.; Burton, 707 F.3d at 426–27. There are two ways in which a

plaintiff can show pretext. <u>Willis</u>, 808 F.3d at 644. The plaintiff may "point to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action" by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason so as to "satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." <u>Id.</u> (quoting <u>Burton</u>, 707 F.3d at 765). Or, alternatively, the plaintiff may "point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action." <u>Id.</u> at 645 (quoting <u>Burton</u>, 707 F.3d at 764). The plaintiff may satisfy this second way of proving pretext by pointing to evidence of any of the following: (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably. <u>Id.</u>

### 1. *Prima Facie* Case

For the purposes of this motion, LVH concedes that Kopko can establish the first three elements of a *prima facie* case of age discrimination. (Doc. No. 43-6 at 5).[10] LVH argues that Kopko has failed to establish the fourth element of a *prima facie* case because she has not presented evidence to raise an inference that the circumstances surrounding her termination were motivated by age discrimination. (Doc. No. 43-6 at 5, 24–25).

---

[10] Upon independent review of the record, it is clear Kopko can establish these three elements. First, she was over the age of forty at the time she was terminated, thus making her a member of the protected class under the ADEA. Second, she was qualified for her position of case manager as evidenced by various employment awards she received. Third, she suffered adverse employment action when LVH terminated her on May 14, 2009.

Kopko relies on certain circumstantial evidence purportedly showing that she was terminated under circumstances that give rise to an inference of age discrimination: (1) prior to being terminated, she was rewarded by her supervisors for accessing protected health information at their requests; (2) her conduct, on the telephone with Bavaria, was not a HIPAA violation; (3) her supervisor, Ms. Prokurat, displayed a hostile attitude toward her and other employees over the age of forty; and (4) the investigation into Kopko's alleged HIPAA violation regarding J.M. was flawed. (Doc. No. 44 at 6–14). I will address each of these evidentiary bases in turn.

### a.    *Kopko's Prior Access of Others' Health Information*

Kopko claims that, on several occasions before she was terminated, she was allowed to access certain individuals' health information without obtaining waivers from those individuals. For example, Kopko maintains that in 2003 she intervened in the treatment of a "seriously ill" patient, without obtaining waivers to do so. (Doc. No. 44 at 7). Kopko was "rewarded" for her actions. (Id.) Another time, in 2006, Kopko accessed the protected health information of the LVH Wound Center director's mother-in-law in order to help place the mother-in-law in a nursing home. (Id.) On another occasion, Kopko accessed Ms. Lawrence's daughter's health information at Ms. Lawrence's request without a waiver. (Id.) According to Kopko, these incidents raise an inference of age discrimination.

Even assuming that Kopko's account of these incidents is true, none of them do anything to create an inference that Kopko was fired because of her age. These incidents do not show that Kopko "was ultimately replaced by another employee who was

14

sufficiently younger." <u>Willis</u>, 808 F.3d at 644. Nor do they provide a basis for any factfinder to conclude that LVH based its decision to terminate Kopko on "impermissible factors." <u>Id.</u> At best, these incidents establish that Kopko had previously accessed the medical information of some of her supervisors' relatives and a former patient during an emergency situation. Even if this prior conduct was prohibited by HIPAA, it does not in any way imply that LVH's subsequent decision to terminate Kopko for the separate J.M. incident was based on Kopko's age.

### b.   The Bavaria Phone Call and LVH's HIPAA Policies

Plaintiff devotes most of her argument, in support of the fourth *prima facie* element, to picking apart LVH's conclusion that her actions with respect to J.M.'s protected health information constituted a HIPAA violation. (Doc. No. 44 at 8, 10–13). According to Kopko, her job description, HIPAA, and LVH's policies, permitted her to do exactly what she did with J.M.'s health information when Bavaria called her. (<u>Id.</u>) Plaintiff essentially takes issue with LVH's interpretation of their own HIPAA policies and claims that her actions did not warrant termination. Whether Kopko violated HIPAA (or was entitled to access J.M.'s health information) has nothing to do with whether LVH terminated her under circumstances giving rise to an inference of age discrimination. Amidst her critique of LVH's HIPAA policies, Kopko does not point to any evidence that would allow a factfinder to infer that LVH terminated Kopko because she was over forty years of age. In fact, even if Kopko is correct in her assessment of LVH's HIPAA policies, this would only show that LVH misinterpreted HIPAA—not that they possessed

age animus. Accordingly, plaintiff's reliance on this evidence, in support of the fourth element, is without merit.

### c.    Ms. Prokurat's Attitude Toward Older Employees

Kopko further alleges that her supervisor in the case management department, Ms. Prokurat, "displayed a hostile and vindictive attitude toward employees in the Case Management Department, including Plaintiff, who were age forty (40) and over." (Doc. No. 44 at 9). Kopko cites to several incidents where Prokurat allegedly (i) asked one older employee when she intended to retire, (ii) put her hands on an older employee "in a menacing fashion," and (iii) stated at some unknown time that "old people better get on the train or get off." (Id.) Kopko also claims Prokurat treated another employee, who happened to be over the age of forty, poorly. (Id.) In her statement of facts, Kopko averred that Prokurat called some of the older employees names such as "deadwood," "drama queen," and "princess".

Taken together, Prokurat's comments amount to stray remarks that bear no connection to LVH's decisionmaking process with respect to Kopko's termination. See Pivirotto, 191 F.3d at 359 (recognizing that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision"); Fuentes, 32 F.3d at 765–66 (noting the same); Cellucci v. RBS Citizens, N.A., 987 F. Supp. 2d 578, 588 (E.D. Pa. 2013) (finding that supervisor's comments about older employees having "fat" pensions, "need[ing] younger faces" in the workplace, and inquiries as to when older employees would retire did not support inference of age discrimination because the

16

comments had nothing to do with the employer's decision to fire plaintiff). Kopko also

does not provide any dates as to when these comments were made. See Keller v. Orix

Credit Alliance, Inc., 130 F.3d 1101, 1112 (3d Cir. 1997) (finding that there was no

inference of age-based animus when the age-related comments occurred "four or five

months prior" to when the plaintiff was discharged); Connolly v. Pepsi Bottling Grp.,

LLC, 347 F. App'x 757, 761 (3d Cir. 2009) (affirming summary judgment because the

decisionmaker's "comments do not all suggest potential age-related bias, and those that

might were made months before defendant's decision to terminate plaintiff and outside

the context of that decisionmaking process"); Adeni v. Vertex, Inc., Civ. Action No. 06-

686, 2007 WL 2728845, at *4–5 (E.D. Pa. Sep. 18, 2007) (holding plaintiff failed to

make out a *prima facie* case of age discrimination in part because the age-related

comments were made years prior to plaintiff's termination); Facciponti v. Wood Co., No.

98-CV-4025, 1999 WL 1073618, at *6 (E.D. Pa. Nov. 12, 1999) (granting summary

judgment on age discrimination claim when "the record [did] not indicate when [the age-

related] comment was made").[11]

    Most importantly, Kopko does not present any evidence indicating that Prokurat's

comments were linked to LVH's decision to terminate her. See, e.g., Logan v.

Countrywide Home Loans, Civ. Action No. 04-5974, 2007 WL 879010, at *8 (E.D. Pa.

March 15, 2007) (granting summary judgment because the age-related comments of

---

[11] Kopko testified that she thinks Porkurat's "drama queen" and other comments were "probably" made "at the end of 2008," which was a half year before Kopko was terminated. (Doc. No. 52 at 4). As this circuit's case law makes clear, even if true, this temporal proximity would be insufficient to raise an inference of age discrimination in Kopko's termination. Keller, 130 F.3d at 1112; Connolly, 347 F. App'x at 761; Adeni, 2007 WL 2728845, at *4–5; Facciponti, 1999 WL 1073618, at *6.

plaintiff's three managers were "relatively isolated," there was a "lack of a substantial nexus between the age-related comments and the employment decision," and "none of the comments was directly related to the employment decision"); Gutknecht v. SmithKline Beecham Clinical Labs., Inc., 950 F. Supp. 667, 670–74 (E.D. Pa. 1996) (granting summary judgment when some of the alleged comments did not relate to age on their "face"). Prokurat's retirement comments, specifically, are not "direct evidence of age discrimination" because they "could just as easily be explained by a desire on [LVH's] part to do some long-term planning." Glanzman v. Metropolitan Mgmt. Corp., 391 F.3d 506, 513 (3d Cir. 2004). Prokurat's use of the names "deadwood," "drama queen," "princess," "incompetent," or "needy"—while potentially insulting—have no connection to age whatsoever. The fact that Prokurat menacingly placed her hands on an employee, who happened to be older, does not mean that Prokurat harbored age animus. Nor does this incident bear any connection to Kopko's termination. Accordingly, none of these incidents support an inference that the circumstances giving rise to Kopko's termination were infected by age animus.[12]

---

[12] Kopko relies on her own self-serving affidavit to argue that Ms. Prokurat instructed her to give some older employees lower performance evaluations. (Doc. No. 44 at 10). Kopko allegedly refused to do this, "verbally supported the older employees," and then reported Ms. Prokurat to management. (Id.) "As a result," Kopko claims, "Ms. Prokurat targeted Plaintiff for removal and/or termination from the Case Management Department." (Id.) These allegations squarely fit within the contours of an ADEA retaliation claim. See Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193–94 (3d Cir. 2015). However, I previously dismissed Kopko's ADEA retaliation claim with prejudice because Kopko failed to exhaust her administrative remedies with respect to this claim. Kopko v. Lehigh Valley Health Network, Civil Action No. 14–1290, 2014 WL 5365023, at *3–4 (E.D. Pa. Oct. 22, 2014). Viewing these allegations in a light most favorable to Kopko would lead to a conclusion that LVH terminated Kopko for participating in protected activity under the ADEA (i.e., reporting a supervisor for age discrimination). Nevertheless, it would not lead to a conclusion that LVH terminated Kopko because Kopko was over the age of forty. While these allegations fall within the ambit of an ADEA retaliation claim, they do not support the ADEA disparate treatment claim presently before me.

In sum, none of the evidence Kopko relies on supports an inference of unlawful age discrimination in Kopko's termination. Therefore, I find that Kopko has failed to establish a *prima facie* case of disparate treatment under the ADEA.[13]

### 2.    Pretext

Even assuming Kopko has made out a *prima facie* case, her disparate treatment claim fails because she has produced insufficient evidence to raise a genuine issue of material fact as to whether LVH's legitimate nondiscriminatory reason for terminating her was pretext for age discrimination.

LVH has articulated a legitimate nondiscriminatory reason for its termination of Kopko: "Kopko at the request of her cousin and with no job-related reason, accessed the electronic health record of a non-patient [J.M.]" and "disclosed J.M.'s PHI to her cousin Bavaria." (Doc. No. 43-6 at 25). LVH's decision to terminate Kopko for her unauthorized use of J.M.'s protected health information is well documented. (Doc. No. 43-3, Ex. M; Doc. No. 43-4, Exs. P, T). Kopko's own testimony reflects that she was told the reason for her termination was a HIPAA violation. (Doc. No. 43-2, Ex. C, Kopko Dep. 160:4–6). Kopko does not dispute that upon being notified of her termination, she used an expletive and admitted to accessing J.M.'s medical record at the request of her cousin Bavaria. (Doc. No. 44 at 2, 12, 14). LVH points to its HIPAA policy and its internal investigation, which affirmed the decision to terminate Kopko for a HIPAA violation. The record

---

[13] In Kopko's briefing, much of the evidence she relies on and many of the arguments she makes in support of her *prima facie* case are more appropriate to the pretext stage of a discrimination claim. Vice versa, many of Kopko's pretext arguments are more appropriate to the *prima facie* case analysis. Whether viewed under a pretext or *prima facie* analysis, for the reasons discussed throughout the rest of this opinion, I find that the evidence adduced by Kopko is insufficient to withstand summary judgment.

evidence clearly establishes that LVH relied on its HIPAA policy in terminating Kopko. Therefore, their articulated reason is legitimate and nondiscriminatory.

Kopko makes several arguments in an attempt to prove that LVH's proffered reason was merely pretext for age discrimination. First, she takes issue with LVH's grievance process, claiming that LVH's internal review of her challenge to being terminated was inadequate and flawed. Next, she argues there were similarly situated employees, under the age of forty, who were treated more favorably than Kopko. Finally, Kopko argues that LVH's proffered reason is not legitimate because she did not actually violate HIPAA, or LVH's HIPAA policy, with respect to her phone call with Bavaria. I will address each of Kopko's pretext arguments in turn.

### a.    HIPAA and LVH's Internal Policies

Kopko's arguments regarding LVH's internal grievance process, HIPAA, and LVH's HIPAA policy are unavailing for several reasons. Above all, Kopko's propositions ignore the general principle, recently reaffirmed by the Third Circuit, that "at the pretext stage it is not a court's role to 'rul[e] on the strength of cause for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" Willis, 808 F.3d at 647 (quoting Keller, 130 F.3d at 1109 (alterations in original)). In the context of employees being terminated based upon allegations of misconduct, "[s]o long as the decision-maker reasonably credited the allegations, an employee's denial is not enough to establish pretext." McNeil v. Greyhound Lines, Inc., 69 F. Supp. 3d 513, 524 (E.D. Pa. 2014); see also Kautz v. Met-Pro Corp., 412 F.3d 463, 468 (3d Cir. 2005) (collecting

20

cases illustrating the point that the pretext inquiry must focus above all on whether the "real reason" for the employer's decision was discrimination).

In the context of employee violations of HIPAA, other laws, and patient confidentiality, specifically, so long as the employer honestly and reasonably believed the employee violated the law or relevant policy, this proffered reason may not be rebutted by the plaintiff arguing that there was no actual violation. See Willis, 808 F.3d at 647 ("The question [at the pretext stage] is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].") (quoting Keller, 130 F.3d at 1109 (alterations in original)); Cononie v. Allegheny Gen. Hosp., 29 F. App'x 94, 96 (3d Cir. 2002) (finding no pretext in case where health care worker was terminated for violating employer's patient confidentiality policy even when the employer "could not show any instances in which it had disciplined other employees for violating the confidentiality policy"); Byars v. UAB Hosp. Mgmt., LLC, Civ. Action No. 2:14-cv-1338-WMA, 2015 WL 5648837, at *3 (N.D. Ala. Sep. 25, 2015) (granting summary judgment in similar case and finding that "[e]ven if [plaintiff-employee] were correct that she did not technically violate the letter or spirit of [the employer]'s HIPAA policy, she acknowledges that [employer] believed she had violated its HIPAA policy"); Tucker v. Tishomingo Hosp. Corp., No. Civ-14-877-M, 2015 WL 4647153, at *7 (W.D. Okla. Aug. 4, 2015) (granting summary judgment on employment discrimination claim at the pretext stage because the hospital-employer "perceived that plaintiff's treatment and handling of [a patient] could have been a potential violation of EMTALA, as well as a violation of its internal policies, and, therefore, terminated

plaintiff as a result of the perceived (real or not) violations"); <u>Kirst v. Gray's Harbor</u>
<u>Comm. Hosp.</u>, No. C14-5014, 2015 WL 362801, at *4 (W.D. Wash. Jan. 27, 2015)
(granting summary judgment at pretext stage when "[t]he evidence show[ed] that the
Hospital reasonably believed that [the plaintiff] violated HIPAA or, at the very least, the
Hospital's policies implementing HIPAA"); <u>Moore v. Park Center, Inc.</u>, 830 F. Supp. 2d
592, 604 (N.D. Ind. 2011) ("[E]ven if Hartley was mistaken about Moore's purported
violation of Park Center's HIPAA and confidentiality policies, this is of no moment, as
[e]ven if the reasons for [the plaintiff's termination] were mistaken, ill considered or
foolish, so long as [the defendant] honestly believed those reasons, pretext has not been
shown.") (alterations in original) (internal quotations omitted); <u>Hofmann v. Aspen Dental</u>
<u>Mgmt., Inc.</u>, No. 3:10-cv-SEB-WGH, 2011 WL 4625920, at *7 (S.D. Ind. Sep. 29, 2011)
("[T]he relevant question is not whether Ms. Hofmann's conduct *actually* violated
HIPAA, but merely whether, at the time it terminated her, Aspen Dental *honestly*
*believed* that her conduct violated HIPAA.") (emphasis in original). It is clear that
Kopko's arguments about the validity of her HIPAA violation do not establish pretext.

For starters, Kopko is unable to point to any evidence suggesting that the real
reason LVH terminated her was age discrimination.[14] The record evidence clearly
provided LVH with plenty of information to honestly and reasonably believe that Kopko
had violated HIPAA and LVH's confidentiality policies. It is undisputed that nothing in
Kopko's job description allowed her to provide physician referrals. (Doc. No. 43-2, Ex.

---

[14] Kopko argues that, in its internal investigation, LVH should have dug deeper in J.M.'s relationship with Bavaria. However, the nature of J.M. and Bavaria's relationship does not change the fact that Kopko admitted accessing J.M.'s health information at Bavaria's request without a waiver from J.M.

C, Kopko Dep. 81:21–25). Kopko nonetheless admits she did refer a physician to Bavaria. LVH's HIPAA policy provides that, without patient authorization, protected health information may not be disclosed to anyone outside of LVH who are not on a "need to know" basis. (Doc. No. 43-1 ¶¶ 10–20). An email from J.M. to Bavaria, LVH's privacy complaint from J.M., and personnel reports, all indicate that Kopko revealed J.M.'s protected health information to Bavaria. (Exs. K, L, M, P to Def.'s Mot. Summ. J.) LVH has also produced evidence that Kopko does not dispute, which proves it was Kopko who accessed J.M.'s health information on the date in question. (Ex. N to Def.'s Mot. Summ. J.) LVH's final decision regarding Kopko's internal appeal also reflects that Kopko "admitted that she accessed this patient's file and gave the information to her cousin." (Ex. T ¶ 1 to Def.'s Mot. Summ. J.) All of this evidence certainly provided LVH with a reasonable basis for concluding that Kopko's actions violated HIPAA and LVH's HIPAA policy.[15] In Kopko's attempts to establish pretext, her mere critique of LVH's decision to credit the statements and conclusions of J.M. and LVH's employees is unavailing. McNeil, 69 F. Supp. 3d at 524 ("[A]n employer may use statements and complaints by co-workers when making a decision to terminate an employee, and the employee cannot later establish pretext by simply challenging the veracity of such statements.") (internal quotation marks omitted); id. ("So long as the decision-maker reasonably credited the allegations, an employee's denial is not enough to establish

---

[15] Contrary to Kopko's arguments, and as explained above, LVH does not need to prove that Kopko actually violated HIPPA in order to articulate a legitimate nondiscriminatory reason. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Willis, 808 F.3d at 647 (quoting Keller, 130 F.3d at 1109 (alterations in original)).

pretext.") (quoting <u>McCormick v. Allegheny Valley Sch.</u>, No. 063332, 2008 WL 355617, at *16 (E.D. Pa. Feb. 4, 2008)). Based on the evidence before me, I find that Kopko did violate LVH's HIPAA policy and the mandates of HIPAA. My finding here is not dispositive. The true test is whether LVH reasonably and honestly believed Kopko had violated their HIPAA policy. LVH's belief was certainly reasonable and honest given the forensic results of their own compliance and IT investigation, J.M.'s complaint, and Kopko's admissions that she spoke to Bavaria about J.M. on the phone and referred a physician to Bavaria all without J.M.'s authorization.

Kopko also argues that LVH's refusal to consent to arbitration is evidence that LVH's proffered nondiscriminatory reason is pretextual.[16] In the same vein, Kopko argues that, had LVH investigated J.M. more, they would have discovered that J.M. held a grudge against Bavaria. None of these arguments demonstrate pretext. The fact that LVH did not agree to arbitrate Kopko's dispute does not show that their proffered reason for terminating her is flawed, incoherent, implausible, or inconsistent. It simply shows that LVH did not wish to proceed to arbitration. Obviously, Kopko could—and did— resort to the courts to adjudicate her claims against LVH. Kopko's insistence that J.M. had it out for Bavaria is also unpersuasive. J.M.'s ill feelings toward Bavaria do nothing to explain the undisputed fact that J.M. called Kopko's—not Bavaria's—employer to lodge a complaint against Kopko—not Bavaria. With the information at hand, LVH had ample reason to investigate the alleged HIPAA violation against Kopko. All of Kopko's

---

[16] LVH's Issue Resolution Procedure allows discharged employees, at the final step, to "ask the Employee Ombudsman to file a request to appear before an independent outside arbitrator." (Doc. No. 43-4, Ex. Q § IV(D)(1)).

complaints amount to a subjective "second-guessing" of LVH's business judgment. Willis, 808 F.3d at 647. It would be one thing if Kopko were able to call into doubt the fact that she referred a physician to Bavaria for J.M. and accessed J.M.'s protected health information without J.M.'s consent. But Kopko does not do this. Instead, she squabbles over LVH's interpretation of HIPAA and LVH's HIPAA policy. Such an approach is not a valid means of demonstrating pretext.

In sum, none of Kopko's criticisms of LVH's policies are indicative of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that could lead a reasonable factfinder to conclude that LVH's proffered reason (a HIPAA violation) was pretext for age discrimination.  Willis, 808 F.3d at 644. This is especially true given that Kopko has admitted to every single one of LVH's allegations of wrongdoing (related to the Bavaria call) other than disclosing J.M.'s information to Bavaria.[17] The facts Kopko relies on also would not "allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action." Id. at 645 (quoting Burton, 707 F.3d at 764). Accordingly, I find Kopko's arguments concerning HIPAA, LVH's HIPAA policy, and LVH's internal grievance procedures, insufficient to establish pretext under either method of proof. Fuentes, 32 F.3d at 764.

---

[17] Kopko admits that: (1) she spoke with Bavaria, (2) referred a physician to Bavaria, (3) Bavaria notified Kopko that the physician was for J.M. who was Bavaria's co-worker and unrelated to her, and (4) never obtained a waiver or authorization from J.M.

b.      *"Similarly Situated" Comparators*

Kopko points to several other incidents involving "similarly situated" LVH employees in an effort to meet her burden of establishing pretext. (Doc. No. 44 at 20). Kopko's arguments regarding comparators are not persuasive. For one, the employees Kopko refers to are not "similarly situated" to Kopko. But above all, LVH has presented undisputed evidence that eliminates any genuine issue of material fact on this point: from April 2008 through February 2010, LVH terminated fifteen employees for HIPAA and patient confidentiality violations; the heavy majority of these employees were younger than forty years old. (Doc. No. 43-1 ¶ 199; Doc. No. 43-4, Ex. Z).

A plaintiff may attempt to prove discrimination in a disparate treatment case by showing that the "employer has treated more favorably similarly situated persons not within the protected class." Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998). In the context of the ADEA, "persons not within the protected class" would be persons younger than forty. "In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." Id. at 647.  To be similarly situated, the employees need not be identically situated, but the comparator must be similar to the plaintiff in "all relevant respects." Wilcher v. Postmaster Gen., 441 F. App'x 879, 881–82 (3d Cir. 2011), cert. denied, 132 S. Ct. 1645 (2012). Some relevant factors courts consider are whether the employees dealt with the same supervisor, were subject to the same standards, shared similar job responsibilities, and the nature of their misconduct. Id. at 881–82.

26

As for the fifteen employees LVH terminated for HIPAA violations between April 2008 and February 2010, nine were under the age of forty when fired and six were over the age of forty when fired. (Doc. No. 43-4, Ex. Z). Kopko does not challenge the accuracy of these numbers. Rather, she states: "[a]ny employee termination for an alleged HIPAA or privacy violation by [LVH] during the calendar years 2008 and 2009, involved facts and circumstances which were not analogous to those resulting in [Kopko's] termination." (Doc. No. 44-1 ¶ 64). However, Kopko does not cite to any record evidence to explain how the facts and circumstances were different. (Id.)[18] The fact that LVH terminated numerous employees for HIPAA violations—and most of them were younger than forty—is fatal to Kopko's case. E.g., Cassidy v. Pocono Med. Ctr., Civ. Action No. 3:12-cv-1191, 2013 WL 2403572, at *8 (M.D. Pa. May 31, 2013) ("As discussed above, the varied ages of those terminated, the similar treatment of all who did not have what Defendant deemed a satisfactory reason for accessing the patient's chart, and the total absence of evidence suggesting age related animus undermine Plaintiff's reliance on terminated employees' subjective beliefs about the worthiness of their proffered excuse.").

Interestingly enough, Kopko—not LVH—relies on situations and LVH employees that bear little to no similarity to the issue in this case. Specifically, Kopko refers to: (1) an employee who assaulted a patient; (2) a doctor who was arrested for writing illegal prescriptions; (3) a doctor who was caught treating patients while under the influence of

---

[18] Rather, she cites her own self-serving affidavit which contains the same conclusory allegation. (Doc. No. 44-3, Ex. A, Kopko Aff. ¶ 130).

narcotics; (4) an employee who gave a patient's test results to the patient's relative

without authorization; (5) an employee who told her husband that her husband's friend

had been a LVH patient; and (6) an employee who told a patient's employer that the

patient was in LVH's emergency room. (Doc. No. 44-1 ¶¶ 52–62; Doc. No. 44-2 ¶¶ 33–

39). Unlike Kopko, who was terminated, these LVH employees were allowed to resign,

reinstated, or not disciplined at all for their conduct. (Id.) Kopko does not allege the age

of the doctors, but claims that the other comparators were younger than forty. (Id.)[19]

   None of the above individuals support Kopko's pretext argument. As for the

doctors, Kopko does not even allege they were under the age of forty. Kopko also fails to

produce any evidence that the doctors and Kopko shared the same supervisor. Obviously,

Kopko's job responsibilities were inherently different than the doctors'. The doctors'

illegal drug use and writing of illegal prescriptions is fundamentally different misconduct

than a HIPAA violation. Kopko's reliance on the LVH employee who assaulted a patient

is also misplaced because patient assault is drastically different misconduct than a

HIPAA violation and, thus, incomparable for the present analysis. Cf. Johnson v.

NewCourtland, Inc., Civ. Action No. 13-4238, 2015 WL 894320, at *3 (E.D. Pa. March

3, 2015) (noting that, when determining whether employees are similarly situated, the

"difference in the severity of the misconduct is a legitimate, non-discriminatory reason

for the difference in the severity of the punishment"). Even if the patient assault were

comparable, Kopko fails to produce any evidence of this employee's job title or job

duties. Nor does Kopko allege this employee shared the same supervisor as Kopko. As

---

[19] Kopko relies exclusively on her own self-serving affidavit to support these allegations.

for the final three comparators, admittedly, these younger employees allegedly violated

HIPAA or patient confidentiality and were allowed to resign, reinstated, or not

disciplined at all. Nonetheless, Kopko offers no evidence regarding these employees' job

titles, job responsibilities, ability to access patient information, or supervisors. Without

more, it is impossible to conclude that Kopko was "similarly situated" to these

employees.

  Even if Kopko has identified one or two younger employees who were not

terminated for HIPAA violations, her pretext argument ultimately fails because she

ignores the breadth of younger employees who were fired by LVH for HIPAA violations.

As explained by the Third Circuit, plaintiffs "cannot selectively choose a comparator."

Simpson, 142 F.3d at 645. "This is not to say that evidence of the more favorable

treatment of a single member of a non-protected group is never relevant, but rather that

the evidence cannot be viewed in a vacuum." Id. By focusing on the plight of one or two

younger employees, and turning a blind eye to all the other younger employees

terminated for HIPAA violations, Kopko has "viewed [the evidence] in a vacuum." Id.

Specifically, Kopko does not address LVH's terminations of Loni Stephen, Tiffany

Hawk, Elizabeth Velasquez, Trisha Creppy, Rayce Kolowitz, Charisa Kromer, Kerri

Copf, Nicole Garris, and Tiffany Benitez, all of whom were under the age of forty at the

time they were terminated. (Doc. No. 43-1 ¶¶ 200–242). Just like Kopko, all of these

substantially younger employees were terminated for violating HIPAA or patient

confidentiality. (Id.)[20] In an ADEA disparate treatment case, "[t]he ultimate inquiry is whether the decision was motivated by the affected employee's age." Simpson, 142 F.3d at 646. In light of the above, even viewing the evidence in a light most favorable to Kopko, no reasonable juror could conclude that LVH's decision to terminate Kopko was motivated by Kopko's age.

## V.     CONCLUSION

Kopko's age discrimination claim fails because there is no genuine dispute of material fact that she is unable to make out the fourth element of a *prima facie* case. Even if she had, LVH articulated a legitimate nondiscriminatory reason for its termination of Kopko: she violated LVH's HIPAA policy. Kopko is unable to rebut this proffered reason because none of the evidence she relies on tends to show that LVH's reason is implausible or that LVH's decision was really motivated by age animus. Kopko does not dispute that the majority of people at LVH who have been terminated for violating HIPAA or patient confidentiality were under the age of forty. For all the foregoing reasons,  LVH's motion for summary judgment is granted.

An appropriate Order follows.

---

[20] This is with the exception of Kerri Copf who resigned in lieu of termination. (Doc. No. 43-5, Ex. MM).